IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA             :

          v.                               :         CRIMINAL NO. 19-71-12

CARL CHIANESE                         :


**GOVERNMENT'S SENTENCING MEMORANDUM**

**I.      Background**

The defendant, Carl Chianese, pled guilty to Count One and a lesser included offense of Count Six of the superseding indictment charging him with racketeering conspiracy, in violation of 18 U.S.C. §1962(d) (Count One); and conspiracy to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B) (a lesser included offense of Count Six). The defendant and the government, ahead of his guilty plea, entered into a plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, agreeing that the appropriate sentence in this case is a total of 60 months' imprisonment, to run concurrent with the sentence the defendant is currently serving in Criminal Numbers 19-713, 18-128, and 98-008 (DNJ, Kugler, J.) and a 3-year period of supervised release. The government urges the Court to accept the terms of the plea agreement and sentence the defendant accordingly. The defendant is scheduled for sentencing on March 10, 2022.

**II.     Plea Agreement**

The defendant and the government entered into a plea agreement that stated that, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the appropriate disposition of this case is as follows: total of 60 months' imprisonment, to run concurrent with the sentence the defendant is

currently serving in Criminal Numbers 19-713, 18-128, and 98-008 (DNJ, Kugler, J.) and a 3-year period of supervised release. If the Court does not accept this plea agreement, then either the defendant or the government will have the right to withdraw from the plea agreement and the defendant may withdraw his guilty plea and proceed to trial.

**III.**    **Statutory Maximum Sentences and Guidelines Calculation**

The Court may impose the following statutory maximum and mandatory minimum sentences: Count One (racketeering conspiracy), 20 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment; and the lesser included offense of Count Six (conspiracy to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine), 40 years' imprisonment, a mandatory minimum 5 year's imprisonment, a 4-year period of supervised release up to lifetime supervised release, a $5,000,000 fine, and a $100 special assessment.

Total Maximum and Mandatory Minimum Sentence is: 60 years' imprisonment, 5 years' mandatory minimum imprisonment, a 4-year period of supervised release up to lifetime supervised release, a $5,250,000 fine, and a $200 special assessment.

In anticipation of sentencing the United States Probation Office prepared a Presentence Investigation Report (PSR). The government agrees with the calculations outlined in the PSR. Pursuant to USSG § 2D1.1, the base offense level for the offense should be 32. PSR ¶ 39. Pursuant to USSG § 2D1.1(b)(1), a two-level enhancement is applied because the defendant possessed a firearm in connection with the offense conduct. PSR ¶ 40. Further, pursuant to USSG § 2D1.1(b)(2), an additional two-level enhancement is applied because the defendant made a credible threat of violence as part of the offense conduct. PSR ¶ 41. Pursuant to USSG

§ 2D1.1(b)(12), he also maintained a premises for the purpose of manufacturing or distributing a controlled substance so another two-level enhancement is applied. PSR ¶ 42. Accordingly, the adjusted offense level is 38. PSR ¶ 64. The defendant timely notified the government that he intended to plead guilty and accepted responsibility for the offense conduct, entitling the defendant to a three-level downward adjustment under USSG §§ 3E1.1(a) and (b). PSR ¶ 49-50. Accordingly, the total offense level is 35. PSR ¶ 51.

The defendant has 6 criminal history points, and committed the offense while under a criminal justice sentence, and therefore falls under a criminal history category of IV. PSR ¶ 63-64. However, the defendant is a Career Offender, and thus his criminal history raises to category VI. PSR ¶ 65. As a result, the defendant's resulting guideline range is 292-365 months' imprisonment. PSR ¶ 104.

## IV.    Consideration of the 3553(a) Factors

The Court must consider all of the sentencing factors set forth in 18 U.S.C. § 3553(a), in determining the appropriate sentence in this case. The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7)

3

the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[1] Restitution is

not an issue in this case.

> A.      **The nature and circumstances of the offense and the history and characteristics of the defendant.**

The defendant is an 82 year old man with a lengthy but somewhat dated criminal history.

The defendant has several convictions, from the 1960's, 1980's and early 1990's, that are too old

to receive criminal history points.[2] However, most recently the defendant was convicted in 1998

and 1999 of federal drug trafficking crimes. PSR ¶ 60-61. According to the PSR he has a history

of legitimate employment with an ironworker's union; however, prior to his most current term of

incarceration he was retired and receiving Social Security benefits. As evident from the facts of

this case, however, he also made money selling illicit drugs and engaging in criminal conduct.

The defendant suffers from chronic kidney disease, heart disease, diverticulitis, hyperlipidemia,

hypertension, and a variety of other medical conditions and is on a regimen of a variety of

medicines and treatments. He has never been married, has no children, and has no siblings.

The defendant's offenses here were serious. He was an associate of the Philadelphia La

Cosa Nostra (LCN) family, a criminal enterprise that, continues to engage in criminal conduct

---

[1]    Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."   The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'"   United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

[2] Those prior convictions were the following: gambling and bookmaking (1964); interstate transportation of a false selective service certificate (1966); several drug trafficking related offenses (1988, 1989, and 1989); and driving under the influence (1994).

and to use intimidation, threats, and its reputation for violence to instill fear and exert power over others.

He engaged in drug trafficking and extortion, among other offenses for years. Many of the defendant's conversations during the FBI's investigation were recorded and he acknowledged, and at times described aspects of the membership of the Philadelphia LCN, including his own association with co-conspirator Joseph Servidio. The defendant was tasked with trafficking drugs and collecting drug proceeds on behalf of the Philadelphia LCN. He obtained counterfeit oxycodone pills, made of heroin and fentanyl, and sold the pills for profit. For this activity, the defendant was charged, convicted and sentenced in New Jersey for his drug dealing but is included within the scope of the defendant's racketeering conduct in the Eastern District of Pennsylvania. There he sold drugs to an undercover agent, collected proceeds from those sales, and gave the monies to Servidio. He also participated in the extortion of other criminals, one of whom was also an FBI Confidential Source, by collecting upon debts owed from those individuals to the LCN.

Also as part of the offense conduct, the defendant's co-conspirators, Victor DeLuca and John Michael Payne using money supplied by Servidio, attempted to purchase methamphetamine from a drug supplier in West Philadelphia, but the supplier deceived them and sold them a non-controlled substance. As a result, the defendant and Servidio threatened to kill Victor DeLuca and John Michael Payne, suspecting that DeLuca and Payne stole money from the LCN. The defendant and Servidio threatened them with a knife and a gun. Ultimately, DeLuca and Payne were not physically harmed. Soon thereafter, the defendant, along with DeLuca, Payne, Servidio, and others, conspired to find and kill the drug supplier for having stolen Servidio's money.

5

The defendant's involvement with LCN criminal activities appeared to be consistent and a part of his everyday life. Indeed, without recent verifiable employment, it appears the defendant earned a living through drug trafficking on behalf of the LCN. The defendant's conduct was serious and dangerous, and the Court need not strain itself in recognizing the harm the defendant caused to his own community while profiting from that harm. The agreed upon sentence will incapacitate the defendant and ensure he is supervised following his release to prevent him from engaging in further crimes.

**B.     The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

There is no question that the offenses to which the defendant has accepted responsibility are serious and dangerous. His lifestyle has reflected a continued lack of respect for the law – he sold various types of illicit drugs and he engaged in these crimes despite a lifetime of contact with the criminal justice system. The agreed upon sentence of 60 months is significant for this defendant, as it will incapacitate the defendant until he is approximately 86 years old, and will be on supervision until he is 89. The sentence will reinforce the seriousness of the offense, respect for the law and just punishment.

**C.     The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

The agreed upon sentence will provide general deterrence, sending a message to those who engage in similar conduct that they will be punished to a lengthy term of imprisonment and be subjected to a burdensome term of supervision. The sentence will also account for specific deterrence so the defendant is less likely to engage in crimes once he is released from prison and on supervision until he is nearly 90 years old. At such an advanced age the likelihood of

recidivism is quite small, and it is highly unlikely that the defendant could engage in drug trafficking and racketeering activities with the LCN at that time. By virtue of the defendant's incarceration the general public will be spared from enduring the effects of the defendant's criminal conduct. Accordingly, the agreed upon sentence achieves the purpose of deterring the defendant and others similarly situated while protecting the public welfare.

> **D.     The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

There is no known need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). To the extent that the defendant faces a need for training, education, care, or treatment, a sentence consistent with the plea agreement will not inhibit the defendant from seeking and receiving assistance for those needs.

> **E.     The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

The government is not aware of any policy statements that are of particular concern in this case.

## V.     <u>Conclusion</u>

As the court is aware, the defendant's plea agreement was entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The agreement stipulates, that if accepted by the Court, that the defendant is to be sentenced to a total of 60 months' imprisonment, to run concurrent with the sentence the defendant is currently serving in Criminal Numbers 19-713, 18-128, and 98-008 (DNJ, Kugler, J.) and a 3-year period of supervised release. While the defendant's guideline range calls for a significantly higher sentence, the agreed upon sentence is,

in this case, consistent with the 3553(a) factors particularly relevant to this individual defendant and with the goal of sentencing the defendant to a punishment that is sufficient but not greater than necessary. It takes into account the defendant's advanced age and his sentences of imprisonment in related federal cases. To that end, the defendant will serve a term of incarceration and supervised release until he is nearly 90 years old. This 60-month sentence sends a message, even to elderly associates of the Philadelphia LCN, that they cannot walk the streets of Philadelphia engaging in criminal conduct with impunity. This sentence will deter the defendant from engaging in further crimes and adequately protect the public from him while he is incarcerated and once he is released on supervision.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney

*s/ Jonathan B. Ortiz*
JONATHAN B. ORTIZ
JUSTIN ASHENFELTER
Assistant United States Attorneys

ALEXANDER GOTTFRIED
KRISTEN TAYLOR
Trial Attorneys, U.S. Department of Justice

8

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of the foregoing to be served upon the following:

Thomas A. Fitzpatrick, Esquire
Counsel for defendant Carl Chianese

*s/ Jonathan B. Ortiz*
JONATHAN B. ORTIZ
Assistant United States Attorney

Dated: March 10, 2022